UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAILEY ALDRICH,

                              Plaintiff,

          -against-

THE UNITED STATES OF AMERICA,

                              Defendant.

22-CV-5297 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Bailey Aldrich slipped and fell from a single step landing at a United States post office, injuring her foot. Defendant, the United States, now moves to exclude the expert testimony of Dr. William Marletta, a safety professional, and for summary judgment in its favor. The Court GRANTS in part and DENIES in part Defendant's motion to exclude Dr. Marletta's testimony, maintaining those portions of his opinions that are based on reliable data and methodology and that may assist the Court as the finder of fact. The Court DENIES Defendant's motion for summary judgment based on the genuine issues of material fact raised as to the inherent dangerousness of the single step landing and whether Defendant was on constructive notice of the alleged dangerous condition.

## BACKGROUND

The following facts are taken from the parties' Federal Rule of Civil Procedure 56.1 statements and supporting materials and are undisputed unless otherwise noted.

### I.    The Lenox Hill Post Office

The Lenox Hill Post Office (the "Post Office"), built in 1935, is located at 217 East 70 Street. ECF No. 56 ("Joint Statement of Material Facts" or "Joint 56.1") ¶ 1. To the right of the Post Office building is a loading dock with two bays for parking. *Id*. ¶ 4. Above the parking bay

is a raised concrete landing with its edge painted in yellow, varyingly referred to as a step, platform, single-step riser, and curb. *Id*. ¶ 5. Above this step is a loading dock, with several T-shaped and square bumpers attached. *Id*. The landing step serves as a wheel stop, to prevent trucks from hitting the loading dock when they are driving in reverse and backing into the bay. *Id*. ¶¶ 7–8. The below picture, taken on the date of the accident, depicts the loading dock area without any trucks parked in the bay.



*Id*. ¶ 5; ECF No. 58-9 at US_000001.

The step is approximately 19 feet and 3-1/16 inches long by 48-3/8 inches deep. Joint 56.1 ¶ 6. The height of the step ranges from 10 ¼ inches to 10 ¾ inches. *Id*. According to Dr. Marletta (Plaintiff's expert), this height departs from safe and accepted practices according to the Building Code as well as the Americans with Disabilities Act (the "ADA") and Occupational Safety and Health Administration ("OSHA") standards. ECF No. 66 ("Pl. 56.1") ¶ 95; *see also* ECF No. 58-8 ("Marletta Rep.") at 47. Dr. Marletta also testified that he was "not aware of the

science that would be able to tell you that the specific difference in height would cause X amount of further injury to somebody when they're falling." Joint 56.1 ¶ 53. The yellow portion of the step is 2-1/2 inches wide. *Id*. ¶ 6. A record from September 21, 2019 refers to the edge of the landing dock as "safety yellow." *Id*. ¶ 10.

## II.    The Incident

Around 2:00 p.m. on June 1, 2021, Plaintiff went to the Post Office to mail items that she had sold online. *Id*. ¶ 11. She went into the Post Office carrying five or six packages in her hands, leaving one package in the car that she was not able to carry in. *Id*. ¶ 12. Plaintiff dropped off the initial five or six packages with a Post Office clerk, informing the clerk that she had one more package to drop off. *Id*. ¶ 14. The parties dispute whether the clerk directed Plaintiff to drop off that last package with an employee in the loading dock. Pl. 56.1 ¶ 1.

Plaintiff returned to her car and retrieved the last package, a typewriter that was approximately 18 inches by 18 inches by 12 inches, which was the biggest package she was mailing that day. Joint 56.1. ¶¶ 15–16. Plaintiff was carrying the package with both of her arms, in front of her torso. *Id*. ¶ 18. As Plaintiff approached the loading dock, Plaintiff saw a truck parked in the left bay and walked toward the right bay. *Id*. ¶ 17. She stepped up on the landing of the loading dock, taking a couple steps onto the landing toward the loading dock. *Id*. ¶¶ 19, 22. Post Office employee James Heege testified that he told Plaintiff to watch her step and that he did not want her to trip on the landing. ECF No. 57 ("Def. 56.1") ¶ 4. While on the landing, Plaintiff handed her package to Heege, who was standing on the loading dock in front of the right bay. Joint 56.1 ¶ 22.

After handing her package to Heege, Plaintiff "said thanks and . . . turned around and took two or three steps with that last step resulting in [her] fall." *Id*. ¶ 23. When Plaintiff took

these two or three steps, she "was looking out towards the street." *Id*. Plaintiff looked down at her feet as she was falling and saw that her right foot had last stepped "on that yellow portion"; seeing her foot on the yellow portion was "visual confirmation" that she had stepped onto the yellow portion of the landing prior to her fall and was no longer stepping on the raw concrete portion of the landing. *Id*. ¶ 24. Plaintiff testified that the yellow portion of the landing where she stepped prior to her fall felt different than the raw concrete part of the landing, as it had a different texture and less grip. *Id*. ¶ 27. She further testified that the yellow part was very worn down, *id*., and that the landing was "crumbly," Def. 56.1 ¶ 7; Pl. 56.1 ¶ 60. Plaintiff did not testify that she slipped on any water. Joint 56.1 ¶ 30.

   Plaintiff believed that the condition that caused her fall was created by trucks running into the back of the landing. Pl. 56.1 ¶ 60. A Combination Wagon Driver for the Post Office testified that he "imagine[d]" that the wheels of mail trucks striking the yellow edge of the landing caused the landing to become cracked or sloped. *Id*. ¶¶ 63, 66–67. And the Customer Service Supervisor testified that it was his belief that part of the reason for the bumpers on the landing was to prevent trucks from running into the back of the landing area. *Id*. ¶¶ 52, 68. Plaintiff testified that the landing "got really curved because the trucks . . . kept backing up against it and wearing it away." Def. 56.1 ¶ 7. Dr. Marletta testified that "I don't think this was ever . . . a squared nosing. So I'm not sure I follow her train of thinking that it got curved." *Id*. ¶ 8.

   Plaintiff's accident occurred approximately between the beginning of the second T-shaped bumper and the middle of the fourth T-shaped bumper, looking at the area from the right.



Joint 56.1 ¶ 28; *see also* Marletta Rep. at 27. A closer visual of the area is shown here:



ECF No. 58-9 at US_000006. None of the witnesses to the accident from the Post Office saw where Plaintiff specifically stepped or knew the condition of where she stepped prior to her fall. Joint 56.1 ¶ 29. Neither were the Post Office witnesses looking at Plaintiff's feet at the time of the accident. *Id*.

Plaintiff testified that as a result of her fall, all of her weight landed on her right foot, and she broke three bones in the top of her right foot close to her ankle. *Id*. ¶ 25. She then landed on her bottom and was in immense pain. *Id*.

**III.     Procedures at the Post Office**

The Post Office performs safety inspections twice per year and fire inspections four times per year. *Id*. ¶ 34. During a safety inspection, a safety specialist, the facility safety coordinator, and potentially a union shop steward, safety captain, and someone from maintenance would "walk the loading dock to look for hazards, slip, trips and fall hazards, emergency lights, handrails, lifts, making sure everything is operational and that no hazard exists." *Id*. ¶ 35. Post Office employees are obligated to report dangerous or defective conditions that they see. *Id*. ¶ 34. Safety Specialist Nicole Marra testified that if the landing presented a hazard such that it could cause an injury to an employee or anyone working in that area, it should have been flagged. *Id*. ¶ 36.

Marra further testified that the height of the landing was never measured or discussed during any inspection and that whether the landing was slippery was never reviewed. *Id*. ¶ 37. It was also never reviewed or discussed during any inspection whether the loading dock landing was improperly sloped. *Id*. ¶ 38. Customer Service Supervisor Roger Russell testified that whether the landing was sloped was never discussed during any safety walkthroughs or meetings and "[i]t could've been [discussed] if someone noticed it." *Id*. ¶¶ 40–41.

None of the safety inspections from November 2018 to the time of the incident flagged any hazards associated with the landing of the loading dock. *Id*. ¶ 42. Plaintiff's liability expert, Dr. Marletta, testified that the inspections performed by the United States Postal Service were deficient and that "anybody inspecting this should have been able to pick up that there were problems." *Id*. ¶ 43. He added that there are issues that are not found or cited in inspections that could still be considered dangerous or defective conditions. *Id*.

Marra did not recall anyone other than Plaintiff slipping and falling at the loading dock at the Post Office from 2018 to September 2021. *Id*. ¶ 44. Marra also did not recall any complaints or incidents regarding the condition of the landing during the same time frame. *Id*. ¶ 45. There have been other incidents in the loading dock area and on the sidewalk in front of the loading dock bay, but there is no evidence of any incidents regarding the landing. *Id*. ¶ 46.

## IV.    Procedural History

Plaintiff filed the Complaint on June 23, 2022. ECF No. 1. Fact discovery closed on March 30, 2023, and expert discovery closed on September 12, 2023, with the exception of the deadline for medical expert depositions, which was adjourned until 45 days after the Court decides the instant motion. *See* ECF Nos. 41, 44, 49. On October 17, 2023, Defendant filed its motion to exclude expert testimony and for summary judgment. ECF No. 54. The motion was fully briefed as of January 19, 2024. ECF Nos. 71–73. The parties waived their right to a jury, and as such, the Court will be the finder of fact at trial.

## LEGAL STANDARD

The Court sets forth the legal standards governing motions to exclude testimony and motions for summary judgment.

## I.    Motion to Exclude Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides

that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"While the proponent of expert testimony has the burden of establishing by a

preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, the

district court is the ultimate gatekeeper." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir.

2007) (cleaned up). It is the district court's responsibility to ensure that "an expert's testimony

both rests on a reliable foundation and is relevant to the task at hand," *Daubert v. Merrell Dow

Pharms., Inc.*, 509 U.S. 579, 597 (1993), and the "district court has broad discretion [in] carrying

out this gatekeeping function," *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016). The

district court's gatekeeping function "applies not only to testimony based on 'scientific'

knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

A court's inquiry focuses on three issues: (1) whether a witness is qualified to be an

expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the

expert's testimony will assist the trier of fact. *Nimely v. City of New York*, 414 F.3d 381, 396–97

(2d Cir. 2005). A "trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (internal citation omitted). However, "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id*. (internal citation omitted). Frequently, "gaps or inconsistencies in the reasoning leading to the expert's opinion go to the weight of the evidence, not to its admissibility." *Id*. (cleaned up); *see also Daubert*, 509 U.S. at 595 ("The focus [of the admissibility inquiry] must be solely on principles and methodology, not on the conclusions they generate.").

## II.    Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. When the movant properly supports her motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."

*Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

## DISCUSSION

The Court first grants in part and denies in part Defendant's motion to exclude Dr. Marletta's expert testimony. The Court then denies Defendant's motion for summary judgment, holding that Plaintiff has identified genuine issues of material fact with respect to whether the alleged condition was inherently dangerous and whether Defendant was on constructive notice of this alleged condition.

## I.    Defendant's Motion to Exclude Testimony Is Granted in Part and Denied in Part

Dr. Marletta formed thirteen "professional opinion[s] with a reasonable degree of certainty." Marletta Rep. at 65–66. Defendant challenges Dr. Marletta's opinions on several bases: that they (1) form inadmissible legal conclusions; (2) are not based on reliable principles and methods; and (3) are based on facts not in the record that are speculative and do not assist the trier of fact. ECF No. 55 ("Mot.") at 16. The Court narrows Opinion 7, excludes Opinion 1, and excludes part of Opinion 4, but otherwise declines to exclude Dr. Marletta's opinions, concluding that Defendant's arguments go to the weight, rather than the admissibility, of his testimony.

### A.  Dr. Marletta's Opinions Form Inadmissible Legal Conclusions In Part

Defendant objects to Opinions 1, 2, 4, and 7 on the basis that they form inadmissible legal conclusions. Mot. at 16–18. Under the Federal Rules of Evidence, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). However, "[i]t is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions." *Densberger v. United Techs. Corp.*, 297 F.3d 66, 74 (2d Cir. 2002)

(internal citation omitted); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (stating that "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts").

The Court narrows Opinion 7, which contains an inadmissible legal conclusion. In Opinion 7, Dr. Marletta claims that Defendant was "negligent in failing to properly maintain, repair, and/or replace the defective condition, or provide adequate warnings in accordance with *The New York City Building Code*, as well as good and accepted safe practice." Marletta Rep. at 57. The word "negligent" impermissibly embraces a legal conclusion. *See Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp. 3d 379, 394 (S.D.N.Y. 2017) (collecting cases holding that an expert's testimony that a defendant was "negligent" should not be allowed). Dr. Marletta, however, may permissibly opine on what steps Defendant reasonably could have taken to maintain, repair, and/or replace the landing as well as provide warnings, and whether Defendant took those steps. *Id*. The Court accepts Plaintiff's suggested revision of the opinion to: "the owner(s) of the property and its agent ("Defendants") failed to properly maintain, repair, and/or replace the defective condition, or provide adequate warnings . . . ." ECF No. 64 ("Opp.") at 14. Additionally, for the reasons discussed *infra* Section I(B), the Court finds that this opinion is based on sufficient facts.

Opinion 1 and part of Opinion 4 are excluded as inadmissible legal conclusions. In Opinion 1, Marletta Rep. at 30–32, Dr. Marletta concludes that the loading dock "became a means of egress when [Plaintiff] was instructed to enter the accident area," *id*. at 30. In Opinion 4, *id*. at 41–47, Dr. Marletta opines that there were "dangerous slopes that forward pitched the curb as a *ramp*," *id*. at 41. Whether the loading dock was a means of egress and whether it was a ramp are questions of law to be decided by the Court because these are both legal terms used in

the Building Code. New York courts have held that "the applicability of the requirements of the Building Code is a question of law to be resolved by the court." *Fishelson v. Kramer Properties, LLC*, 708, 19 N.Y.S.3d 580, 583 (2d Dep't 2015) (internal citation and quotation marks omitted); *see also Bautista v. 85th Columbus Corp.*, 976 N.Y.S.2d 806, 814 (N.Y. Sup. Ct. 2013) ("[T]he issues as to the applicability and meaning of the building code are for the court to decide as a matter of law."); *Gaston v. New York City Hous. Auth.*, 695 N.Y.S.2d 83, 85 (1st Dep't 1999) (holding that whether the Building Code required the staircase to have a center handrail presented a question of law, not fact). Thus, whether the loading dock is a means of egress and whether the landing is a ramp are matters of law for the Court to decide. *See Kahn v. Town Sports, Int'l, Inc.*, No. 03-CV-9046 (AJP), 2005 WL 2192486, at *2 (S.D.N.Y. Sept. 12, 2005) (determining that the section of the Building Code that governs the construction and maintenance of interior stairs did not apply to the area at issue and therefore excluding expert testimony regarding that section of the Building Code). Accordingly, the Court excludes these opinions.

Nonetheless, the Court declines to exclude Opinion 2 and part of Opinion 4 at this juncture, wherein Dr. Marletta interprets various codes and statutes, including iterations of the Building Code and ADA. In Opinion 2, Marletta Rep. at 32–38, Dr. Marletta opines, in part based on his conclusion that the loading dock was a means of egress, that "the design of a single riser is hazardous and dangerous to stair users" and "should be avoided, as it departs from applicable standards, building codes, and good and accepted safe practice," *id.* at 32. In Opinion 4, *id.* at 41–47, Dr. Marletta opines that the "ramp slopes involved with the accident are incredibly excessive and depart from *The New York City Building Code*, ADA Standards, and good and accepted safe practice," *id.* at 41.

Defendant argues that these opinions should be excluded on the basis that they interpret codes and statutes, the applicability and statutory interpretation of which are matters of law for the Court to decide. Mot. at 16–18. Courts in this circuit have allowed expert testimony on various regulatory and professional standards. *See, e.g.*, *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) (allowing expert testimony regarding companies' compliance with FDA regulations when the case was governed by state law theories of negligence and strict liability such that the expert's testimony would "not usurp the Court's role in explaining the law to the jury, but [would] assist the jury in determining whether [Defendant] acted as a reasonably prudent pharmaceutical manufacturer"); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) (noting, in the context of a medical malpractice action, that "[e]xpert testimony is normally required to establish the applicable standard of practice and, in an appropriate case, to determine whether an alleged deviation from that standard was the proximate cause of a plaintiff's injuries"); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, No. 12-CV-7372 (AT), 2020 WL 4251229, at *5 (S.D.N.Y. Feb. 19, 2020) (allowing testimony based on expert's experience and the relevant financial industry standards).

"When an expert offers an opinion relevant to applying a legal standard . . . the expert's role is limited to describing sound professional standards and identifying departures from them." *Fin. Guar. Ins. Co.*, 2020 WL 4251229, at *5 (quoting *Restivo*, 846 F.3d at 580). That is what Dr. Marletta's opinions do here: provide information on standards and departures from them. He does not opine that a dangerous condition exists solely because a code or statute was violated, but instead cites to code and statute violations as part of his overall analysis regarding Defendant's alleged failure to maintain the step. Defendant has not pointed to any viable basis upon which to exclude these opinions. Whether the opinions are applicable to the instant matter,

13

however, depends on if the Court determines that the loading dock is a means of egress and the landing is a ramp, which the Court lacks sufficient information to do at this juncture.

### B.  Dr. Marletta's Opinions Are Based on Sufficient Facts

Expert testimony is admissible only if it is "based on sufficient facts or data." Fed. R. Evid. 702(b). Dr. Marletta relied on the following materials when forming his expert opinions: (1) photographs of the accident area; (2) inspection and maintenance problem reports; (3) Plaintiff's deposition testimony; (4) depositions from Post Office employees; (5) various other litigation materials provided to him by Plaintiff's counsel; and (6) an onsite inspection on November 15, 2022. Marletta Rep. at 1–24, 27–29. Any gaps or inconsistencies in Dr. Marletta's report go to the weight of the evidence, not its admissibility, as Dr. Marletta's report is based on sufficient facts and data.

In Opinion 3, Marletta Rep. at 38–41, Dr. Marletta concludes that a lack of visual cues was the proximate cause of Plaintiff's accident, *id*. at 38. Defendant does not argue that there are no facts to support Dr. Marletta's conclusion that there was poor visual contrast between the top and bottom of the landing, and instead claims that Dr. Marletta's opinion should not be persuasive, because, for example, Plaintiff was not looking down at the time of the accident. *See* Mot. at 18–19. Defendant also has not pointed to any reason why the materials Dr. Marletta relied upon are insufficient. *See Hewitt*, 244 F. Supp. 3d at 387 (finding materials such as deposition testimony, a site inspection, and various scientific literature, among others, to satisfy the "sufficient facts or data" requirement of Rule 702). Overall, the Court concludes that Defendant's criticisms of the type of information Dr. Marletta relied upon when forming his expert opinions go to the weight, rather than the admissibility, of the proffered testimony and will not exclude Opinion 3. *See Restivo*, 846 F.3d at 577.

In Opinion 5, Marletta Rep. at 47–52, Dr. Marletta concludes that the "excessive height of the single-step riser was a proximate cause" of Plaintiff's injury, *id*. at 47. As with Opinion 3, Defendant's criticisms go to the weight, not the admissibility, of the proffered testimony. *See Restivo*, 846 F.3d at 577. The Court will not exclude Opinion 5.

Defendant takes issue with the statement in Opinion 6, Marletta Rep. at 52–57, that the landing was a "smooth, hard surface" and that when a "smooth, hard surface is combined with water or a foreign substance left laying on its surface, conditions are ripe for a slip and fall accident," *id*. at 52. *See* Mot. at 19. Dr. Marletta used a Surtronic roughness meter to measure the roughness of the floor at different sites in the area of the accident. Marletta Rep. at 54. Defendant does not allege that this method is unreliable. Instead, Defendant argues that Dr. Marletta's testimony that "it would not surprise [him]" if there were water or a foreign substance on the landing is "untested conjecture." *See* Mot. at 19. Dr. Marletta cannot testify as to unsupported beliefs about whether there was water or a foreign surface on the landing. But the Court, at this juncture, will not exclude the opinion that when a smooth, hard surface is combined with water or a foreign substance, conditions are ripe for an accident. The parties may both elicit supported testimony about the condition of the landing at the time of the accident. The Court will determine at trial whether and to what extent to rely on this opinion.

As to Defendant's contention that Opinion 6 should be excluded because Dr. Marletta was unable to identify with certainty the location of the accident, Mot. at 20, the Court holds that Opinion 6 is permitted. Dr. Marletta identified generally where Plaintiff's accident occurred; it is not entirely uncertain where Plaintiff fell. *See* Marletta Rep. at 27 (depicting a photograph where an "X" indicates the approximate location of Plaintiff's fall). The Court, as finder of fact at trial, will determine how much weight to assign to the fact that Dr. Marletta determined the average

roughness of the landing. The same is also true for Opinion 7, Marletta Rep. at 57–61, where Dr. Marletta notes that the "loading dock and curb had worn metal, excessive slopes, garbage and filth, an excessive riser, and more," *id*. at 57. Although Defendant argues that there is no evidence that these conditions existed or contributed to the accident, the Court will determine what weight, if any, to assign this opinion at trial.

Defendant moves to exclude Opinions 10, 11, and 12 on the basis that they are "not connected to the facts of this case and [do] not provide any specialized knowledge to assist the Court." Mot. at 21. In Opinion 10, Marletta Rep. at 62–63, Dr. Marletta opines that conditions "contrary to our expectation" can contribute to a slip and fall, *id*. at 62. In Opinion 11, *id*. at 63–64, he concludes that the "normal cone of vision of the pedestrian" makes hazards on walking surfaces difficult to distinguish, *id*. And in Opinion 12, *id*. at 64, Dr. Marletta concludes that surface changes are "difficult to distinguish due to the to view perspective of the pedestrian," *id*. Defendant's conclusory arguments that Dr. Marletta's statements are not connected to the facts of the case fail to establish that these opinions were not based upon reliable data and methodology or will not assist the Court as the finder of fact. *See Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (noting that expert testimony should be excluded when there is "too great an analytical gap between the data and the opinion proffered"); *see also Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (internal citation and quotation marks omitted) (stating that expert testimony should only be excluded "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," and that "[o]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony"). The Court will not exclude Opinions 10, 11, or 12.

The Court also sees no reason to exclude Opinion 13, Marletta Rep. at 66, that "these departures from codes, rules, regulations and good and accepted safe practice were the proximate cause(s) of the accident," *id*. Although Defendant argues that this is a conclusory statement that lacks scientific or legal basis, for the reasons stated *supra* Section I(A), the Court rejects this argument.

### C.  Defendant's Other Arguments to Exclude Dr. Marletta's Expert Testimony Are Unavailing

In Opinion 8, Marletta Rep. at 61–62, Dr. Marletta opines that "there was a failure to adequately train employees in safe practices that prohibited pedestrians from entering into dangerous areas," *id*. at 61. Defendant's only argument is that this testimony does not raise any material issue of fact, Mot. at 20, which is not a basis to exclude the testimony.

Defendant also quibbles with Opinion 9, Marletta Rep. at 62, which states that additional warning signs should have been posted in the area of the accident, *id*. Defendant argues that the landing was painted in yellow, therefore providing a warning and that Plaintiff was aware of the step. Mot at. 20–21. Like with Opinion 8, Defendant does not point to any basis to exclude this opinion. The Court will not exclude Opinion 9.

## II.     Defendant's Motion for Summary Judgment Is Denied

Plaintiff has identified genuine issues of material fact rebutting the conclusion that the alleged condition was not inherently dangerous. To state a claim for negligence under New York law, Plaintiff must demonstrate "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (quoting *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002)).

Two duties are implicated here: the "duty to warn of [a] hazard" and the "duty to maintain the premises in a reasonably safe condition." *Borley v. United States*, 22 F.4th 75, 82 (2d Cir. 2021) (quoting *Aberger v. Camp Loyaltown, Inc.*, 142 N.Y.S.3d 528, 532 (1st Dep't 2021)). Under New York law, "a landowner has no duty to protect or warn against an open and obvious condition which, as a matter of law, is not inherently dangerous." *Varon v. N.Y.C. Dep't of Educ.*, 998 N.Y.S.2d 433, 434 (2d Dep't 2014). "[T]o show a 'breach of duty,' a plaintiff must show that a defendant either created the dangerous condition or had actual or constructive notice of the condition and its dangerousness." *Borley*, 22 F.4th at 79 (citing *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125 (2d Dep't 2010)). Whether the condition is open and obvious and inherently dangerous is often a fact-specific consideration, *Perez v. Dolgen Corp. of New York Inc.*, No. 22-CV-4324 (KPF), 2024 WL 871288, at *5 (S.D.N.Y. Feb. 29, 2024), as is whether defendant's conduct breached their duty. *Borley*, 22 F.4th at 79.

Here, Plaintiff has identified genuine issues of material fact as to inherent dangerousness and whether Defendants had constructive notice of the alleged dangerous condition.

### A. Plaintiff Has Identified a Genuine Factual Dispute as to Whether the Landing Was Inherently Dangerous

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that Defendant fails to show the absence of a genuine issue of material fact. "Whether a condition is not inherently dangerous, or constitutes a reasonably safe environment, depends on the totality of the specific facts of each case." *Perez*, 2024 WL 871288, at *12 (quoting *Russo v. Home Goods, Inc.*, 990 N.Y.S.2d 95, 96 (2d Dep't 2014)). "In assessing inherent dangerousness, a court may consider factors including the inherent nature of the condition at issue, evidence of prior accidents, whether there is a statutory violation,

the frequency of inspections, photographs depicting the condition, and expert testimony."

*Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 386 (S.D.N.Y. 2015).

Although the Court finds for Plaintiff, many of Plaintiff's arguments about the inherent nature of the condition of the landing do not create an issue of material fact. Plaintiff argues, *inter alia*, that the step was slippery, Opp. at 26, and that it either is not a wheel stop or that it differs physically from wheel stops that courts have found not to be inherently dangerous, *id*. at 27–28. First, "courts have consistently held that the slipperiness of a step is not an actionable defect, even when the slipperiness was allegedly caused by the fact that the step or materials applied to the step, such as paint or treads, were worn." *Espriel v. Starbucks Corp.*, No. 20-CV-10881 (NRB), 2023 WL 144439, at *6 (S.D.N.Y. Jan. 10, 2023) (collecting cases). Second, wheel stops that are clearly visible are generally not inherently dangerous. *See Gallo v. Hempstead Turnpike, LLC*, 948 N.Y.S.2d 660, 661 (2d Dep't 2012) (collecting cases); *see also Mayorga v. Kokkoris*, 192 N.Y.S.3d 548, 550, *leave to appeal denied*, 224 N.E.3d 545 (2d Dep't 2023) (affirming grant of summary judgment for defendants where defendants established through photographic evidence and plaintiff's deposition testimony that the wheel stop was not inherently dangerous). Although Plaintiff argues in her opposition that the landing is not a wheel stop, Opp. at 27–28, the parties jointly submitted a Rule 56.1 Statement affirming that that the loading dock serves as a wheel stop, to prevent trucks from hitting it when they are driving in reverse and backing into the bay, Joint 56.1 ¶¶ 7–8.

An analysis of prior accidents and inspections does not help Plaintiff either. The Post Office performs safety inspections twice per year. *Id*. ¶ 34. Although Dr. Marletta testified that "anybody inspecting this should have been able to pick up that there were problems," and that there are issues not found in inspections that could still be considered dangerous conditions, *id*.

¶ 43, that testimony on its own does not raise an issue of material fact. Moreover, a safety specialist did not recall anyone other than Plaintiff slipping and falling at the loading dock from 2018 to September 2021. *Id*. ¶ 44. Nor did she recall any complaints or incidents regarding the condition of the landing during the same time frame. *Id*. ¶ 45.

The photographs of the area where the accident occurred also do not raise a genuine issue of material fact. *See Pena v. Women's Outreach Network, Inc.*, 824 N.Y.S.2d 3, 7 (1st Dep't 2006) ("The photographs of the stairs similarly failed to depict any dangerous or defective condition."). To the contrary, photographs taken on the day of the incident show that the yellow edge of the landing is clearly visible without anything obviously or inherently dangerous. *See* ECF No. 58-9 at US_000001, US_000006. Although Plaintiff argues that photographs do not show a bright yellow, Opp. at 30, many of the photographs that Plaintiff relies on in pointing to areas that may not be bright yellow instead depict areas of the landing other than where Plaintiff fell.

However, Dr. Marletta's expert testimony narrowly precludes summary judgment in Defendant's favor. Dr. Marletta's report raises a triable issue of fact at least with respect to the alleged improper height of the landing.[1] Specifically, Dr. Marletta reported that the height of the landing was between 10 ¼ to 10 ¾ inches high, which departs from safe and accepted practices according to the Building Code as well as ADA and OSHA standards. Pl. 56.1 ¶ 95; Marletta Rep. at 47. His report stated that "[i]n the event Ms. Aldrich attempted to step down to the bottom landing of the single-step riser, the drop would not have met her expectation, meaning that her body would have gained more force upon descent than expected, thereby opening her up

---

[1] Because the Court finds that this evidence precludes a finding of summary judgment in Defendant's favor, the Court does not address Plaintiff's arguments about ramp slope, poor visual contrast, and remaining arguments regarding the condition of the landing.

to a misstep occurrence." Marletta Rep. at 52. Accordingly, Plaintiff has demonstrated a genuine issue of material fact with respect to inherent dangerousness. The Court turns to whether Defendant breached its duty.

### B. Plaintiff Has Identified a Genuine Factual Dispute as to Whether Defendant Had Constructive Notice of the Alleged Dangerous Condition

There is also a genuine issue of material fact as to whether Defendant had constructive notice of the alleged dangerous condition. "[T]here are two ways in which a plaintiff can establish constructive notice on the part of the defendant: either (i) by demonstrating that the defective condition (a) was visible and apparent and (b) had existed for a sufficient length of time to permit the defendant to discover and remedy the condition, or (ii) by demonstrating that the defect is a recurring condition." *Bynoe v. Target Corp.*, 548 F. App'x 709, 710 (2d Cir. 2013).

Here, there is no dispute that the height of the landing has existed for years. *See* Joint 56.1 ¶ 42 (stating that safety inspections of the landing occurred since at least November 2018). But, there is a question about whether the height discrepancy "was visible and apparent." In particular, it is unclear whether "the allegedly defective condition[] deviate[s] from accepted practices by relatively small dimensions that could only be detected through structural analysis." *See Deykina v. Chattin*, No. 12-CV-2678 (ARR), 2014 WL 4628692, at *8 (E.D.N.Y. Sept. 15, 2014). Neither party has presented evidence as to whether the landing being three inches higher than provided for by statute could be detected by eye or only by structural analysis. As such, the Court cannot determine as a matter of law that there was no constructive notice here.

### CONCLUSION

For the reasons stated herein, Defendant's motion to exclude Dr. Marletta's testimony is GRANTED in part and DENIED in part and Defendant's motion for summary judgment is

DENIED. A case management conference is scheduled for **November 25, 2024** at **12:00 p.m.** in Courtroom 11B of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York. Prior to the conference, counsel for all parties must meet for at least one hour to discuss settlement. At the conference the parties should be prepared to discuss whether all parties consent to mediation or a settlement conference to be held before the designated Magistrate Judge as well as their availability for trial. The Clerk of Court is directed to terminate ECF No. 54.

Dated:  September 26, 2024
     New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge